# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

|  |  |  |
|---|---|---|
| **AUSTIN ALEXANDER** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CASE NO. 3:23-CV-00449-DJH** |
| **v.** | ) | |
| | ) | |
| **HEIGHTS FINANCE CORP.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

*/s/ Daniel E. Linneman*
Jeffrey C. Mando, Esq. (#43548)
Daniel E. Linneman, Esq. (#91695)
ADAMS LAW, PLLC
40 West Pike Street
Covington, KY 41011
859.394.6200 | 859.392.7200 – Fax
jmando@adamsattorneys.com
dlinneman@adamsattorneys.com
*Attorneys for Defendant, Heights Finance Corp.*

I

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................ 3

PROCEDURAL HISTORY ............................................................................... 4

STANDARD OF REVIEW ................................................................................ 5

ARGUMENT ...................................................................................................... 6

    I.      The binding arbitration agreement applicable to the putative class precludes certification. ................................................................. 6

      A.      The members of the putative class entered in a binding, enforceable arbitration agreement with Heights, governed by the FAA, that included a valid class action waiver provision. ..................................... 7

          1.      The arbitration agreement is binding and enforceable, as it is neither procedurally nor substantively unconscionable. ................................... 7

          2.      The arbitration agreement is governed by the FAA and its broad mandate in favor of upholding arbitration agreements and enforcing their terms, including class action wavier provisions. ........................... 8

      B.      The scope of the arbitration provision is extremely broad, clearly including the claims asserted against Heights in this case. ................... 9

    II.      Plaintiff failed to meet his burden to prove numerosity under Rule 23(a)(1). ................................................................................... 10

    III.      Plaintiff failed to meet his burden to prove commonality under R. 23(a)(2). ................................................................................... 11

    IV.      Plaintiff failed to meet his burden to prove typicality under Rule 23(a)(3). ................................................................................... 13

      A.      The putative class members are subject to arbitration agreements, with class waivers, but the named Plaintiff is not. ...................................... 14

      B.      Plaintiff is subject to a unique voluntary payment defense. ............... 17

    V.      Plaintiff failed to meet his burden to prove adequacy of representation under R. 23 (a)(4). ................................................................... 18

II

A.    Plaintiff has failed to prove he is an adequate representative. ........... 18

B.    Plaintiff's counsel failed to meet their burden that they will adequately represent the class. .............................................................................. 20

VI.    Plaintiff failed to meet his burden to satisfy the predominance requirement of 23(b)(3). ........................................................................ 21

VII.    Class adjudication is not superior, because individual adjudications are unavoidable. ............................................................................................ 22

VIII.    Plaintiff has failed to prove the class is ascertainable. ........................ 22

A.    The court cannot determine who is in the class. ................................ 23

B.    The proposed class is an improper "fail safe" class. ........................... 23

CONCLUSION ........................................................................................... 25

## **TABLE OF AUTHORITIES**

**Cases**                                                                                               **Page(s)**

*Adams v. Fed. Materials Co.*,
  2006 WL 3772065 (W.D. Ky. 2006) ................................................................. 3
*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ...................................................................................... 5
*Avilez v. Pinkerton Gov't Servs., Inc.*,
  596 F. App'x 579 (9th Cir. 2015) ............................................................. 14, 17
*Best v. James*,
  2023 WL 145007 (W.D. Ky. Jan. 10, 2023) ............................................... 9
*Brashear v. Perry Cty.*,
  2007 WL 1434876 (E.D. Ky. May 14, 2007).............................................. 11
*Bright v. Brookdale Senior Living, Inc*,
  2021 WL 6496799 (M.D. Tenn. June 5, 2024) ...................................... 15, 16
*City of Morganfield v. Wathen*,
  202 Ky. 641, 261 S.W. 12 (1924)............................................................. 17
*Cobble v. T-Mobile Sprint*,
  No. 321CV000415RGJRSE, 2024 WL 1251339 (W.D. Ky. Mar. 22, 2024) .................... 7, 8
*Cole v. City of Memphis*,
  839 F.3d 530 (6th Cir. 2016) ................................................................. 23
*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ...................................................................................... 5
*Conde v. Open Door Marketing, LLC*,
  223 F. Supp. 3d 949 (N.D. Cal. 2017).................................................... 14
*Davis v. Norton Healthcare*, 2020-CA-0151-MR,
  2021 WL 223528 (Ky. Ct. App. Jan. 21, 202) ....................................... 17
*Erica P. John Fund, Inc. v. Halliburton Co.*,
  563 U.S. 804 (2011) ................................................................................. 21
*Faulkner Concrete Pipe Co.*,
  659 F.2d 554 (5th Cir. 1981) .................................................................. 20
*Gaston v. Calhoun Cnty. Bd. of Ed.*,
  88 F.R.D. 356 (N.D. Miss. 1980) ............................................................ 20
*General Telephone Co. of Southwest v. Falcon*,
  457 U.S. 147 (1982) ................................................................................. 18
*Gevedon v. Purdue Pharma*,
  212 F.R.D. 333 (E.D. Ky. 2002).............................................................. 3
*Gooch v. Life Investors Ins. Co. of Am.*,
  672 F.3d 402 (6th Cir. 2012) .................................................................. 18
*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000) .................................................................................. 6
*Guzman v. Bridgepoint Educ., Inc.*,
  305 F.R.D. 594 (S.D. Cal. 2015) ............................................................ 23
*In re Am. Med. Sys., Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ................................................. 11, 13, 14, 18

*In re Asacol Antitrust Litig.*,
   907 F.3d 42 (1st Cir. 2018)..................................................................... 5, 21, 22

*In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*,
   2023 WL 5997294 (W.D. Ky. Sept. 15, 2023)................................................ 16

*In re Papa John's Employee and Franchisee Employee Antitrust Litigation*,
   2025 WL 2255624 (W.D. Ky. Aug. 7, 2025)............................... 15, 18, 19, 20

*In re Skelaxin (Metaxalone) Antitrust Litig.*,
   299 F.R.D. 555 (E.D. Tenn. 2014) ................................................................... 24

*Jensen v. Cablevision Systems Corporation*,
   372 F. Supp. 3d 95, (E.D. N.Y. 2019) .................................................. 14, 15, 19

*King v. Capital One Bank (USA), N.A.*,
   No. 3:11-CV-68, 2012 WL 5570624 (W.D. Va. Nov.15, 2012)................... 14, 16

*Lindsay Transmission, LLC v. Off. Depot, Inc.*,
   2013 WL 275568 (E.D. Mo., 2013) .............................................................. 24, 25

*Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................................................. 8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614(1985) ............................................................................................... 8

*Nestle Waters N. Am., Inc. v. Bollman*,
   505 F.3d 498 (6th Cir. 2007).............................................................................. 10

*Norfolk County Retirement System v. Community Health Systems, Inc.*,
   332 F.R.D. 556 (M.D. Tenn. 2019) ................................................................... 17

*Parker v. Tenneco, Inc.*,
   114 F.4th 786 (6th Cir. 2024)............................................................................. 8

*Ping v. Beverly Enterprises, Inc.*,
   376 S.W.3d 581 (Ky. 2012)................................................................................. 6

*Preferred Care of Delaware, Inc. v. Hewgley*,
   No. 1:17-CV-00127-GNS, 2017 WL 4478011 (W.D. Ky. Oct. 6, 2017) ............ 7, 8

*Quinlan v. Macy's Corp. Servs., Inc.*,
   No. 12-20737, 2013 WL 11091572 (C.D.Cal. Aug. 22, 2013) ............................. 14

*Quinonez v. Pharm. Specialties, Inc.*,
   2017 WL 4769436 (C.D. Cal. Aug. 10, 2017) ................................................... 20

*Randleman v. Fidelity Nat'l Title Ins. Co.*,
   646 F.3d 347 (6th Cir.2011)............................................................................. 24

*Renton v. Kaiser Found. Health Plan, Inc.*,
   No. 2001 WL 1218773 (W.D. Wash. Sept. 24, 2001)....................................... 14

*Russell v. Citigroup, Inc.*,
   2015 WL 9424144 (E.D. Ky. Dec. 22, 2015)..................................................... 22

*Santangelo v. Comcast Corp.*,
   2017 WL 6039903 (N.D. Ill. 2017) ............................................................... 16, 19

*Schilling v. Kenton Cnty., Ky.*,
   2011 WL 293759 (E.D. Ky. 2011) ................................................................ 23, 24

*Senter v. General Motors Corp.*,
   532 F.2d 511 (6th Cir. 1976) ........................................................................ 11, 18

*Simon v. Pfizer Inc.*,
   398 F.3d 765 (6th Cir. 2005) ............................................................................. 10

*Speerly v. General Motors LLC*,
   143 F. 4th 306 (6th Cir. 2025) ........................................................... 11, 12, 21, 22
*Tan v. Grubhub, Inc.*,
   2016 WL 4721439 (N.D. Cal. July 19, 2016) ................................................. 14, 19
*Tarrify Props., LLC v. Cuyahoga Cnty.*,
   37 F.4th 1101 (6th Cir. 2022) ........................................................................... 23
*Tschudy v.J.C. Penney Corp., Inc.*,
   No. 11-CV-1011, 2015 WL 8484530 (S.D. Cal. Dec. 9, 2015) ............................ 14
*Vega v. T-Mobile USA, Inc.*,
   564 F.3d 1256 (11th Cir. 2009) ........................................................................ 22
*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................ 1, 5, 21, 22
*Williams v. Dearborn Motors 1, LLC*,
   2021 WL 3854805 (6th Cir. Aug. 30, 2021) ..................................................... 8, 9
*Young v. Magnequench Int'l, Inc.*,
   188 F.R.D. 504 (S.D. Ind. 1999) ...................................................................... 21
*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 531 (6th Cir. 2017) ............................................................................ 23

Statutes

28 U.S.C. § 2072(b) ............................................................................................. 5
KRS 304.12-010 ............................................................................................. 2, 21
KRS 304.19-080(3)(a) ................................................................................. Passim
KRS 367.220 ....................................................................................................... 2
KRS 413.120(1) ................................................................................................... 2
KRS 413.120(2) ................................................................................................... 2

Rules

Fed. R. Civ. P.23(a)(1) ...................................................................................... 11
Rule 23(a) .............................................................................................. 1, 5, 18
Rule 23(a)(3) ............................................................................................. 13, 18
Rule 23(a)(4) ............................................................................................. 19, 21
Rule 23(b)(3) .......................................................................................... 5, 21, 22
Rule 23(b), Fed. R. Civ. P ................................................................................ 1, 5
Rule 23, Fed. R. Civ. P ................................................................................ Passim

Other Authorities

7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1769.1, at 375 .............. 21
Newberg and Rubenstein on Class Actions § 3:45 (6th ed. 2022) ............................... 14
Newberg on Class Actions, § 3.13, at 3–75 (3d ed. 1992) .................................... 13, 17

Defendant Heights Finance Corp. ("Heights" or "Defendant") submits this opposition brief to Plaintiff Autin Alexander's ("Plaintiff") Motion for Class Certification, Doc. 29-1 (the "Motion").

## INTRODUCTION

A plaintiff must affirmatively demonstrate his compliance with Rule 23, Fed. R. Civ. P. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiff has failed to meet his burden of proof that class certification is appropriate. Plaintiff faces numerous insurmountable hurdles, not the least of which is that the putative class agreed to arbitrate and waived their right to participate in a class action. Although Plaintiff opted out of the arbitration agreement, he is a class of one. As a result, Plaintiff cannot satisfy the numerosity, typicality or adequacy requirements of Rule 23(a). Plaintiff also cannot satisfy the adequacy requirement pursuant to the voluntary payment doctrine and based on his counsels' experience and prosecution of the litigation.

Plaintiff has also failed to meet his burden to show that common issues predominate over individual questions under Rule 23(b), Fed. R. Civ. P. Plaintiff has not established which individuals during the relevant time period paid credit life insurance premiums exceeding the Alleged Cap, although he admits in the motion it is an individualized issue. (Doc. 29-1 at p .4). Plaintiff offers only the unsupported allegation that whether a class member was overcharged for credit-life insurance "can be determined by ministerial inspection of Heights's records." (*Id.*) Heights on the other hand, through this filing, has presented uncontroverted evidence that some of the credit life premiums during the Relevant Time Period complied with the Alleged Cap. Even if some putative class members paid a premium exceeding the Alleged Cap, they should be excluded from the class because they agreed to arbitrate and not participate in a class action. The arbitration issue also shows a class action is not the superior method for resolving the dispute, and the class

1

is not ascertainable.

Plaintiff asks the Court to certify three classes:

**A. Class I: Violation of the KCPA**
All consumers to whom Heights sold a credit-life insurance policy within the last two (2) years of the filing of this complaint in which the premium for the credit life insurance exceeds the cap set forth in KRS 304.19-080(3)(a).

**B. Class II: Violation of Kentucky's Consumer Loan Companies Statutes**
All consumers to whom Heights sold a credit-life insurance policy within the last ten (10) years of the filing of this complaint in which the premium for the credit-life insurance exceeds the cap set forth in KRS 304.19-080(3)(a).

**C. Class III: Unjust Enrichment**
All consumers to whom Heights sold a credit-life insurance policy within the last five (5) years of the filing of this complaint in which the premium for the credit-life insurance exceeds the cap set forth in KRS 304.19-080(3)(a) and who paid the subject creditor enough under the underlying loan to at least cover the amount of the credit life insurance premium.

As an initial matter, the classes overlap and consequently do not make sense as proposed. All three proposed classes include individuals whose credit life premium exceeded the Alleged Cap in KRS 304.19-080(3)(a). In Class I, the relevant time period is two years before the Complaint was filed, presumably based on the two-year statute of limitations for claims under the Kentucky Consumer Protection Act. KRS 367.220. Class II is based on a violation of KRS 304.12-010, but it includes same individuals as in Class I – namely, those insureds whose credit life premium exceeded the Alleged Cap - but Class II proposes to extend the relevant time period to ten years before the Complaint was filed. The ten-year period is not tied to any statute of limitations. Heights assumes the appropriate time period for Class II should be five years, absent some explanation from Plaintiff justifying the ten-year period. *See* KRS 413.120(2). Class III includes the people in Class I and the people in Class II. Since the statute of limitations for unjust enrichment is five years (KRS 413.120(1)), it also covers the same (corrected) time period as Class

2

II.

Since none of the proposed classes should be certified, the issue may be moot, but the proposed classes are not distinct and should not be certified as proposed, even if Plaintiff could meet the requirements of Rule 23, which he cannot. "Although not specifically mentioned in [Rule 23], the definition of the class is an essential prerequisite to maintaining a class action." *Adams v. Fed. Materials Co.*, 2006 WL 3772065 at *3 (W.D. Ky. 2006) (quoting *Gevedon v. Purdue Pharma*, 212 F.R.D. 333, 335 (E.D. Ky. 2002)). As a result, for purposes of this brief, Heights defined the Relevant Time Period as five (5) years before the complaint was filed, June 4, 2019.

## BACKGROUND

Plaintiff obtained a consumer loan from Heights Financial Corporation ("Heights") in 2023. In connection with the loan, he signed a Promissory Note and Security Agreement ("Note"). (Tyler Watkinss Decl., Ex. A at ¶ 5, Note attached to the Declaration as Exhibit A). The Note includes an arbitration agreement with a class action waiver. (*Id.*, Note at p.5).  Plaintiff opted out of the arbitration agreement (*Id.* at ¶ 10), but he is the only Heights customer who opted out. (*Id.*).

Pursuant to the Note, Southern issued a decreasing coverage credit life insurance policy to Plaintiff. (Cherbonneau Decl., attached hereto as Ex. B at ¶ 9, Policy certificate attached to the Declaration as Exhibit A). The original amount of insurance (the same as the total amount financed) was $9,613.04. (Ex. B, Policy at p.1).  The premium was $306.93, and the policy matured in 48 months (the same as the loan term). (*Id.*). Plaintiff's complaint alleges that the premium charged by Southern for credit life insurance in Kentucky exceeds the premium amount allowed by statue, specifically KRS 304.19-080(3)(a).

Not all of the premiums charged for credit life insurance in Kentucky in connection with Heights loans in the Relevant Time Period exceeded the Alleged Cap. (Ex. B at ¶ 6). After June 4,

3

2019 but within the Relevant Time Period, Southern applied for and received approval from the Kentucky Department of Insurance to charge rates based on different criteria than the criteria underlying the rates in the Alleged Cap. (the "Approved Deviated Rates"). (*Id*. at ¶ 7). Specifically the new criteria included advanced (older) issue ages, advanced (older) terminal ages (when the credit life policy expires), a terminal illness accelerated death benefit, and a reduced suicide exclusion period. (*Id*.).  After June 4, 2019, but within the Relevant Time Period, Southern ceased charging the Approved Deviated Rates in connection with loans by Heights. (*Id*. at ¶ 8). During the Relevant Time Period, the loan documents for every loan offered by Heights in Kentucky included an arbitration provision and class waiver like the one in Plaintiff's Note. (Ex. A at ¶¶ 7-8).

## PROCEDURAL HISTORY

On July 25, 2023, Plaintiff filed this purported class action lawsuit alleging that Heights charged premiums for credit life insurance that exceeded the Alleged Cap in KRS 304.19-080(3)(a) (the "Heights Lawsuit"). When Heights filed a Notice of Bankruptcy (Doc. 15), Plaintiff filed a lawsuit against Southern Financial making substantially the same allegations. *Alexander v. Southern Fin. Life Ins. Co.,* case no. 3:24-cv-393-DJH-CHL (the "Southern Lawsuit"). Heights emerged from bankruptcy on August 20, 2024. (Heights Lawsuit, Doc. 17). The Heights Lawsuit and the Southern lawsuit were consolidated for discovery purposes on July 15, 2025 (Heights Lawsuit, Doc. 27; Southern Lawsuit, Doc 18). Plaintiff moved for class certification on August 25, 2025 in the Southern Lawsuit (Doc. 19) and on September 1, 2025 in the Heights Lawsuit (Doc. 29).  Pursuant to an agreed order, this Court coordinated the briefing schedule such that Defendants' opposition briefs are due October 8, 2025, and Plaintiff's replies are due October 22, 2025 (Heights Lawsuit, Doc. 31; Southern Lawsuit, Doc. 23).

4

## **STANDARD OF REVIEW**

The Supreme Court has explained that the "class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011). As such, Fed. R. Civ. P. 23 "imposes stringent requirements for certification that in practice exclude most claims." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013). There is no "entitlement to class proceedings for the vindication of statutory rights." *Id.* The Supreme Court has "[r]epeatedly . . . emphasized" that "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites'" of Rule 23 have been met. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Wal-Mart*, 564 U.S. at 350–51). A court's class-certification analysis may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351.

A plaintiff "must affirmatively demonstrate his compliance with" Fed. R. Civ. P. 23. *Id.* at 350. The movant must "prove . . . *in fact*" that the four requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy) and one of the Rule 23(b) requirements are met. *Id.*; *Comcast*, 569 U.S. at 33. Rule 23(b)(3) requires the court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"[A]ctual, not presumed conformance with" the Rule 23 requirements "remains . . . indispensable." *Wal-Mart*, 564 U.S. at 351 (internal quotations and citations omitted). "The fact that plaintiffs seek class certification provides no occasion for jettisoning the rules of evidence and procedure, the Seventh Amendment, or the dictate of the Rules Enabling Act, 28 U.S.C. § 2072(b)." *In re Asacol Antitrust Litig.*, 907 F.3d 42, 53 (1st Cir. 2018); *Wal-Mart*, 564 U.S. at 367.

5

## <u>ARGUMENT</u>

**I.      The binding arbitration agreement applicable to the putative class precludes certification.**

Each putative class member signed a Promissory Note and Security Agreement ("loan agreement"), when he or she took out a loan with Heights. (Ex. A at ¶¶ 7-8). That agreement contained an arbitration provision governed by the Federal Arbitration Act. (*see, e.g.* Ex. A, Note at p. 5 (The "Federal Arbitration Act ('FAA') shall govern any arbitration under this Arbitration Agreement notwithstanding any election of other governing law in this Note.").) It also included a Class Action Waiver provision. (*Id.*) While Plaintiff may have opted out of the arbitration provision, the putative class members did not. (Ex. A at ¶ 10). Thus, the question is whether Heights can enforce the arbitration clause and class action waiver against the putative class members. This determination is for the Court. (*See* Ex. A, Note at p. 5) (The agreement requires that the Court, not an arbitrator, settle any "disputes about the validity, enforceability, coverage, or scope" of the agreement.").) If the Court determines that the arbitration agreement is valid and enforceable and encompasses the claims asserted against Heights, then the Class Action Waiver clause bars certification here.

As the party seeking to compel arbitration and enforce the Class Action Waiver, Heights bears the initial burden of proving the existence of an arbitration agreement. *See Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581, 590 (Ky. 2012). If there is a valid agreement, then the burden shifts to Plaintiff to prove that his claims fall outside its scope. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 81 (2000) ("[T]he party resisting arbitration bears the burden of proving that the claims at issue fall outside the scope of the arbitration provision."). Here, the arbitration agreement and the Class Action Waiver provision are valid and enforceable. Moreover, given the exceptionally broad wording of the agreements, it is equally clear that Plaintiff's claims fall within

its scope. As such, the putative class members have waived the right to bring a class action against Heights. Class certification is improper, and each putative class member is limited to pursuing any claims against Heights in an individual arbitration proceeding.

**A. The members of the putative class entered in a binding, enforceable arbitration agreement with Heights, governed by the FAA, that included a valid class action waiver provision.**

**1. The arbitration agreement is binding and enforceable, as it is neither procedurally nor substantively unconscionable.**

Each putative class member signed a "loan agreement," when he or she took out a loan with Heights. (Ex. A at ¶¶ 7-8). That agreement contained an arbitration clause that is both procedurally and substantially conscionable. The clause is valid and enforceable.

First, the clause is procedurally conscionable; no borrower can claim "unfair surprise." The heading on the first page states in bold text: "**Including Arbitration Agreement**." (Ex. A. Note at p. 5). The arbitration provision itself is written in bold and underlined type and set out in a box, distinguishing it from the rest of the document. (*Id*.) There is no question that the putative class members were aware or should have been aware of the arbitration clause. *Cobble v. T-Mobile Sprint*, No. 321CV000415RGJRSE, 2024 WL 1251339, at *4 (W.D. Ky. Mar. 22, 2024) (An arbitration agreement is conscionable and enforceable if it is "not concealed or disguised within the form; its provisions are clearly stated such that purchasers of ordinary experience and education are likely to be able to understand it[; it is written] in clear and concise language[; and the] title is in bold print.").

Second, the clause is not substantively unconscionable, because its terms are not "unreasonably or grossly favorable to one side," and "the disfavored party [did] assent" to them. *Preferred Care of Delaware, Inc. v. Hewgley*, No. 1:17-CV-00127-GNS, 2017 WL 4478011, at *5 (W.D. Ky. Oct. 6, 2017). Likewise, "(i) the provisions are plainly stated; (ii) the implications are

7

in capitalized bold type; (iii) the provisions are reciprocal and do not limit recovery by either party; and (iv) the Arbitration Agreement granted [the borrower] the right to opt out of the arbitration provision within [forty-five] days of execution of the agreement." *Id.* "[I]t is a basic arbitration clause permitting either side to compel arbitration. It has no unique characteristics to distinguish it from any other standard arbitration clause. Accordingly, [it] is not substantively unconscionable." *Cobble*, 2024 WL 1251339 at *4. Moreover, each arbitration agreement provided a mechanism for customers to opt out of arbitration.

> **2. The arbitration agreement is governed by the FAA and its broad mandate in favor of upholding arbitration agreements and enforcing their terms, including class action wavier provisions.**

The FAA has a "broad mandate in favor of upholding arbitration agreements. [It] reflects Congress's intent to create a liberal federal policy favoring arbitration. Arbitration entails a matter of contract, and the Supreme Court has instructed that courts must rigorously enforce arbitration agreements according to their terms, including terms that specify with whom [the parties] choose to arbitrate their disputes and the rules under which arbitration will be conducted." *Williams v. Dearborn Motors 1, LLC*, 2021 WL 3854805, at *3 (6th Cir. Aug. 30, 2021). Thus, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "Having made the bargain to arbitrate, the party should be held to it . . . ." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628(1985).[1]

---

[1] Kentucky's view on such class waiver clauses has no bearing in proceeding. *Parker v. Tenneco, Inc*., 114 F.4th 786, 792 (6th Cir. 2024), *cert. denied*, 145 S. Ct. 1060, 220 L. Ed. 2d 386 (2025) (A court cannot "invalidate an arbitration agreement with a class action waiver based on the claim that class action waivers are unconscionable under state law—that argument, premised as it is on the individualized nature of arbitration procedures, interfere[s] with a fundamental attribute of arbitration.") (citation and quotation omitted).

8

Accordingly, all the terms of the arbitration provision in the loan agreement, including the Class Action Waiver, must be enforced as drafted. *Williams*, 2021 WL 3854805 at *3 ("[C]lass waiver policies are lawful under the FAA and enforceable . . . ."); *see also Best v. James*, 2023 WL 145007, at *5 (W.D. Ky. Jan. 10, 2023) ("[C]lass action waivers are enforceable in the arbitration context.")

Thus, the Class Action Waiver must be enforced as written:

> If you or we elect to arbitrate a dispute: (1) neither you nor we may participate in a class action in court or in a class-wide arbitration, either as a plaintiff, defendant, or class member; (2) neither you nor we may act as a private attorney general in court or in an arbitration; (3) disputes brought by or against you may not joined or consolidated with disputes brought by or against any other person; and (4) the arbitrator shall have no authority to conduct a class-wide arbitration, private attorney general arbitration, or multiple-party arbitration.

(Ex. A, Note at p. 5.) Accordingly, presuming the Court determines that the scope of the agreement is broad enough to encompass the claims against Heights, the putative class members cannot proceed as a class—either in court or in arbitration. They have waived that right by contract, and that waiver must be enforced.

### B. The scope of the arbitration provision is extremely broad, clearly including the claims asserted against Heights in this case.

Because the arbitration agreement ius valid and enforceable, the burden falls to Plaintiff to prove that his claims—asserted on behalf of a class of individuals that chose *not* to opt out—fall outside the scope of the agreement. He cannot.

The arbitration clause contained in the loan agreement is extremely broad:

> "Dispute" shall have the broadest meaning possible. It includes any claim, dispute, or controversy between you [] and us that in any way arises from or relates to the loan, the Collateral, or this Note. This includes disputes arising from actions or omissions on or prior to the date of this Note. . . . Dispute includes initial claims, counterclaims, cross-claims, and third-party claims. It includes disputes based upon contract, negligence, fraud and other intentional torts, constitution, statute,

9

regulation, ordinance, common law, and equity (including any claim for injunctive or declaratory relief.

(Ex. A, Note at p. 5). First, the term "dispute" must be interpreted with the broadest possible meaning, and the Court should presume arbitration and resolve any doubt in its favor. *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) ("When faced with a broad arbitration clause, such as one covering any dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration.").

There is no question that Height's alleged misconduct falls directly within the definition of "dispute." Plaintiff claims that Heights violated Kentucky law by charging an excessive premium for the Southern credit-life insurance policy he purchased and financed in conjunction with his loan. (*See* Compl. ¶¶ 16-17.) It is unquestionably a "claim, dispute, or controversy" between Heights and each borrower "that in any way arises from or relates to the loan, the Collateral, or this Note," and it is based in both contract and statute. Moreover, the "Note," or loan agreement makes direct reference to credit-life insurance, noting that the borrower can "purchase Credit Life Insurance" as part of the loan. (Ex. A, Note at p. 1) The amount of the premium is expressly set out in the loan agreement, and it was paid/financed under the terms of that agreement. Indeed, Plaintiff cannot raise these claims against Heights without *direct* reference to the loan agreement, which he attached as an exhibit to the Complaint. *See* Compl. at Ex. A. *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007) ("[I]n deciding whether an issue is within the scope of an arbitration agreement courts should ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement.") (citation and quotations omitted). The claims asserted against Heights fall within the scope of the arbitration agreement and are subject to arbitration.

## II.    Plaintiff failed to meet his burden to prove numerosity under Rule 23(a)(1).

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P.23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). In making this determination, the Court may consider "reasonable inferences drawn from facts before it." *Senter v. General Motors Corp.*, 532 F.2d 511, 523 (6th Cir. 1976). But the Court may not rely on speculation or the conclusory allegations of the proposed representatives. Instead, Plaintiffs must "show some evidence of or reasonably estimate the number of class members." *Brashear v. Perry Cty.*, 2007 WL 1434876, at *4 (E.D. Ky. May 14, 2007) (internal quotation marks and citation omitted).

Except for Plaintiff, all putative class members contractually agreed to the Class Action Waiver provision when they signed the binding, enforceable loan agreement but failed to opt out. They cannot pursue class claims against Heights—either in court or in arbitration. As the only borrower to opt out of the arbitration provision, Plaintiff stands alone—a "class of one" that cannot satisfy the numerosity requirement.

### III.    Plaintiff failed to meet his burden to prove commonality under R. 23(a)(2).

Plaintiff identifies only a single purportedly common question: "Whether Southern charged Mr. Alexander and each class member a credit-life insurance policy that exceeds the statutory limit set forth in KRS 304.19-080(3)(a)." (Doc. 29-2 at p. 8). Incredibly, Plaintiff fails even to identify his own causes of action, much less address their essential elements. Such cursory treatment disregards the most basic requirements of class certification, as the Sixth Circuit recently reaffirmed in *Speerly v. General Motors LLC,* 143 F. 4th 306 (6th Cir. 2025) *(en banc).*

In *Speerly,* the Sixth Circuit thoroughly examined commonality, including the "imperative of an element-driven analysis." *Id.* at 318. The Court further explained:

A common question must resolve an issue that is central to the validity of each one of the claims. To ensure the questions, whether factual or legal, are central, a court must ensure that they affect at least one element of all 59 claims. The court must walk through each cause of action and identify the relevant elements. Because an issue is not central unless it affects at least one contested element in each cause of action, it flows from *Wal-Mart* that only an element-oriented analysis permits the court to identify which questions meaningfully move the lawsuit forward. Only after identifying the relevant elements of each cause of action may it decide whether a "yes-or-no answer" would resolve an element "for the class in one stroke.

. . .

A court may not simply ask whether generalized questions yield a common answer. That would undermine the bedrock principle that courts must identify common questions with respect to concrete elements of each claim. By hitching all 59 claims to a question about "defect" in the abstract, the court overlooked how significant differences across each cause of action raise serious commonality concerns.

*Id.* at 317-318 (internal citations omitted)

Plaintiff's Complaint asserts three claims: (1) violation of the Kentucky Consumer Protection Act, (2) violation of Kentucky consumer loan statutes, and (3) unjust enrichment. Yet, his motion and supporting brief for class certification—<u>where he bears the burden of proof</u>—fail to identify even a single issue affecting a contested element of any claim. In fact, Plaintiff does not mention a single element of these three causes of action. This omission falls far short of his obligation to affirmatively demonstrate, with significant proof, that the proposed class satisfies Rule 23's prerequisites. On that basis alone, his motion should be denied.

To hold otherwise would directly contravene *Speerly* and the authorities cited therein. In *Speerly*, the plaintiffs contended that commonality existed because each claim required proof of a transmission design defect. The court rejected that argument, emphasizing that commonality requires common questions tied to the elements of each cause of action. *Id.* at 319 ("The plaintiffs must tie that debated question to 'the relevant elements' of that claim; they cannot simply ask whether a 'defect' exists in the abstract.

And the plaintiffs must prove that common evidence would yield a common answer; they cannot ignore the individualized inquiries that might occur with respect to the allegedly 'common' question.").

Plaintiff has done even less here. His generalized assertion—that the common question is whether Southern charged Mr. Alexander and each class member a credit-life insurance premium exceeding the statutory limit set forth in KRS 304.19-080(3)(a)—fails to identify any common issue tied to the specific elements of his claims. Plaintiff does not even identify, much less explain, how this purported common issue affects at least one contested element of each cause of action. This omission extends to every claim he asserts: he does not clarify how the alleged overcharge bears on what is "unfair, false, misleading, deceptive, or unlawful" under the KCPA; whether he applies those same terms consistently under his consumer loan claim; or how any of these theories relate to the benefits allegedly conferred upon and inequitably retained by Southern for purposes of his unjust enrichment claim.

### IV.    Plaintiff failed to meet his burden to prove typicality under Rule 23(a)(3).

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079, 1082 (6th Cir. 1996). A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members. *Id.* (citing Newberg on Class Actions, § 3.13, at 3–75 (3d ed. 1992)). A proposed class representative's claim may not be typical if it is subject to a unique defense that does not apply to the other class members' claims, or in the rare circumstance where only the class representative is exempt from a defense that applies to the rest

13

of the class. Newberg and Rubenstein on Class Actions § 3:45 (6th ed. 2022) (June 2025 Update).

### A. The putative class members are subject to arbitration agreements, with class waivers, but the named Plaintiff is not.

The Plaintiff is not typical of the class, because he is exempt from a defense applicable to the class. *Id.* This exact issue was addressed in *Jensen v. Cablevision Systems Corporation*, 372 F. Supp. 3d 95, 124, (E.D. N.Y. 2019). In that case, the named plaintiff sought certification of a class against Cablevision Systems Corporation for statutory violations. *Id.* at 102. To get service, Cablevision customers entered into a contract containing arbitration and class waiver provisions. *Id.* at 105. The named plaintiff opted out but he was one of approximately one percent of the customers who opted out of the arbitration and class waiver provisions. *Id.* at 122.

The court concluded that the named plaintiff lacked typicality. *Id.* at 123 ("The mere potential that the relevant arbitration provision is valid is sufficient to preclude a named plaintiff who opted out of the provision from representing a class largely made up of individuals that may be subject to the agreement."). The *Jensen* court found persuasive the court's decision in *Tan v. Grubhub, Inc.*, 2016 WL 4721439 (N.D. Cal. July 19, 2016) *aff'd sub nom. Lawson v.Grubhub, Inc.*, 13 F.4th 908 (9th Cir. 2021). In *Tan*, there were only two opt-outs and the court found the named plaintiff could not satisfy typicality (or adequacy), because his claims were atypical of the putative class members who were subject to the arbitration and class waiver provisions. *Id.* at *3 (citing *Avilez v. Pinkerton Gov't Servs., Inc*., 596 F. App'x 579 (9th Cir. 2015); *Tschudy v.J.C. Penney Corp., Inc.,* No. 11-CV-1011, 2015 WL 8484530, at *3 (S.D. Cal. Dec. 9, 2015); *Quinlan v. Macy's Corp. Servs., Inc.*, No. 12-20737, 2013 WL 11091572, at *3 (C.D.Cal. Aug. 22, 2013); *King v. Capital One Bank (USA), N.A.*, No. 3:11-CV-68, 2012 WL 5570624, at *14 (W.D. Va. Nov.15, 2012); *Renton v. Kaiser Found. Health Plan, Inc.*, No. 2001 WL 1218773, at *7 (W.D. Wash. Sept. 24, 2001)). *See also Conde v. Open Door Marketing, LLC,* 223 F. Supp. 3d 949,960

14

(N.D. Cal. 2017) (finding that "the defenses the [class representatives] are subject to are not typical of the class as proposed" because class representatives did not sign arbitration agreements to which other class members were bound and, therefore, class representatives "have no interest in the enforceability of the arbitration agreement itself").

A recent case in this district addressed the typicality issue in a situation where some of the class members were subject to arbitration and ultimately concluded that typicality was not defeated, but it is distinguishable. *In re Papa John's Employee and Franchisee Employee Antitrust Litigation,* 2025 WL 2255624 (W.D. Ky. Aug. 7, 2025)[2]. In *Papa John's*, the court found that arbitration was not a unique defense because about half the class, but not the named representative, signed employment agreements containing arbitration provisions. *Id.* at *4 (finding "Papa John's doesn't have a unique (much less uniquely distracting) defense against [the class representative's] claim. Rather, it has a defense that potentially runs against many thousands—though not all—putative class members" and "Papa John's defense doesn't isolate [the class representative] within the class."). Here, the evidentiary record suggests that Plaintiff Austin Alexander alone is exempt from the arbitration defense that applies to the rest of the putative class. (Ex. A). The instant case is more like *Jensen, supra,* where over 99 percent of the class was subject to arbitration.

To be clear, Heights is not suggesting that the mere presence of an arbitration provision precludes class certification. *See, e.g. Bright v. Brookdale Senior Living, Inc*, 2021 WL 6496799, *16 (denying motion to strike class allegations and discussing cases within the Sixth Circuit that have certified classes despite the possibility that the claims of some class members were subject to arbitration). Rather, Southern is suggesting that where all, or virtually all, of the class has agreed

---

[2] Heights notes that the class certification in *Papa John's* is preliminary and the final fairness hearing is not scheduled until January 7, 2026. *Papa John's*, Case No. 3:18-cv-825-BJB (Doc. 270)

15

to arbitration and class waiver provisions, but the class representative has not, class certification should be denied, relying on *Jensen* and the other cases cited above.

*Bright v. Brookdale* illustrates that the number or percentage of putative class members subject to arbitration is an important consideration. In that case, the defendant moved to strike class allegations arguing that Plaintiffs, neither of whom was subject to an arbitration agreement, could not meet the typicality or adequacy requirements for certification of classes consisting almost entirely of individuals with arbitration agreements. *Id.* at *14. The *Bright* court noted that in the cases relied upon by the defendant in which courts had struck class allegations, the court had evidence regarding the portion of potential class members that had agreed to arbitration. *Id.* at *15 (discussing two of the cases relied upon by Southern in this case - *Santangelo v. Comcast Corp.*, 2017 WL 6039903, *4-5 (N.D. Ill. 2017) and *King v. Capital One Bank (USA), N.A.*, No. 3:11-CV-68, 2012 WL 5570624, at *14 (W.D. Va. Nov.15, 2012)). Because the *Bright* court did not have such evidence, it denied the motion to strike class claims at that point in the litigation and before discovery on that issue. *Id.* at 16. Here, there is evidence that the putative class agreed to arbitration and class waiver provisions. (Ex. A at ¶¶ 7-8). Plaintiff has offered zero evidence regarding the number of opt-outs. Also, it is worth noting that, after discovery, the *Bright* court denied plaintiffs' motion for class certification. *Bright*, 2024 WL 2868512, *6 (M.D. Tenn. June 5, 2024) (finding that the criteria outlined by Plaintiffs for enforceability of the arbitration agreements lends itself to a host of individualized inquiries that are likely to result in discovery for each arbitration agreement defeating typicality and predominance).

Because all putative class members are limited to an individual arbitration proceeding, while Plaintiff is not, he can no longer represent their interests. He cannot satisfy the typicality requirement. *See In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*, 2023 WL 5997294,

16

at *4 (W.D. Ky. Sept. 15, 2023) (citing *Avilez v. Pinkerton Gov't Servs., Inc.*, 596 F. App'x 579 (9th Cir. 2015) ("To the extent the classes and subclasses include individuals who signed class action waivers, [the named Plaintiff] is not an adequate representative and her claim lacks typicality."))

### B. Plaintiff is subject to a unique voluntary payment defense.

When a defendant has unique defenses against a proposed class representative, it may affect typicality. *Papa John's* at *4 (citing Newberg & Rubenstein § 3.13). This is true because litigating a unique defense may "distract the named plaintiff to such an extent that its representation of the interests of the rest of the class will suffer." *Id.* (citing *Norfolk County Retirement System v. Community Health Systems, Inc.*, 332 F.R.D. 556, 568 (M.D. Tenn. 2019) (collecting cases)).

Under the voluntary payment doctrine, "[w]here one pays an illegal demand with full knowledge of all the facts which render the demand illegal, without an immediate and urgent necessity therefor, or unless to release his person or property from detention or to prevent an immediate seizure of his person or property, the payment is voluntary." *City of Morganfield v. Wathen*, 202 Ky. 641, 261 S.W. 12, 14 (1924). A recent case (although unpublished and non-precedential) noted that *Wathen* is still good law. *Davis v. Norton Healthcare*, 2020-CA-0151-MR, 2021 WL 223528, *2 (Ky. Ct. App. Jan. 21, 202) (discretionary review denied by Supreme Court June 9, 2021) (affirming grant of summary judgment for the defendant based on the voluntary payment doctrine on claim that the defendant charged fees for medical records in violation of Kentucky statutes).

The credit life insurance premium was included in the total amount financed. (Ex. A, Note at p.1). Plaintiff admits that he is current on his loan payments. (Doc. 29-1 at p. 2). This means that Plaintiff has made payments since he filed this lawsuit alleging the credit life premiums are

unlawful. (Ex. A at ¶ 11). Consequently, under the voluntary payment defense, Plaintiff has waived the right to challenge the premium. Litigating this defense would "distract the named plaintiff to such an extent that [his] representation of the interests of the rest of the class will suffer." *Papa John's,* 2025 WL 2255624 at *4.

> **V.    Plaintiff failed to meet his burden to prove adequacy of representation under R. 23 (a)(4).**

Rule 23(a)(4) allows certification only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1083 (6th Cir. 1996). The Sixth Circuit has articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter v. General Motors Corp.,* 532 F.2d 511, 525 (6th Cir.), *cert. denied,* 429 U.S. 870 (1976).  *See also General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n. 13 (1982) ("adequacy of representation requirement ... also raises concerns about the competency of class counsel and conflicts of interest").

> **A.  Plaintiff has failed to prove he is an adequate representative.**

The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members. *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1083 (6th Cir. 1996). If class members' interests "are not aligned" "in significant respects," one party cannot serve as the representative for all. *Papa John's*, 2025 WL 2255624 at *4 (citing *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 429 (6th Cir. 2012)). Because the named plaintiff is exempt from the arbitration defense that is applicable to the class and because the named plaintiff is subject to a unique voluntary payment defense, not only does he fail to satisfy typicality under Rule 23(a)(3),

18

he also fails to satisfy adequacy under Rule 23(a)(4).

In this case, Plaintiff Austin Alexander's claims are not aligned with the claims of the putative class. *See Jensen*, 372 F.Supp.3d at 124-125 ("Because the Plaintiff cannot adequately represent the interests of those putative class members who are potentially bound by the arbitration and class action waiver provisions, the Plaintiff is not an adequate representative of the class. *See Tan*, 2016 WL 4721439, at *3."). *See also Santangelo v. Comcast Corp.*, 2017 WL 6039903, *4-5 (N.D. Ill. 2017) (finding the arbitration provision applicable to an overwhelming majority of the class sufficiently arguable to challenge the ability of the named plaintiff to adequately represent the interests of the class).

*Papa John's* again is instructive even though it ultimately determined the named plaintiff was an adequate representative of the class, at least for preliminary approval of the settlement. *Papa John's,* 2025 WL 2255624 at *4-6. In *Papa John's*, which involved a settlement (and thus unopposed) class, the putative class members subject to arbitration would receive a discounted recovery under the proposed class settlement - 25% of the recovery of the class members not subject to arbitration. The court's adequacy analysis focused on whether the class representative could adequately represent that class members subject to arbitration and, specifically, on the amount of the recovery. The court reluctantly agreed that the class representative could but, in doing so, it noted that the class members subject to arbitration might receive nothing absent the classwide settlement. *Id.* at *5. In fact, the case started with a proposed class representative who was subject to arbitration, but Papa John's successfully moved to compel arbitration resulting in the dismissal of that plaintiff. The court concluded: "Papa John's [was] willing to settle but not litigate arbitrable claims on a classwide basis." *Id*. at *5. The court concluded that the discounted recovery was reasonable because the claims subject to arbitration were less valuable – "certainly

19

reasonable enough not to call into question the adequacy of [the class representative's] representation of employees who otherwise might've recovered nothing in litigation *or* arbitration." Id. at *6. *Papa John's* is distinguishable because no such settlement is on the table. The issue here is not whether a proposed settlement is fair to the class members who are subject to arbitration such that Plaintiff Austin Alexander can be deemed an adequate representative. Heights intends to compel arbitration against each member of the putative class, and Heights is unwilling to settle those claims on a classwide basis. In this case, Plaintiff Austin Alexander's claims are not aligned with the claims of the putative class.

### B. Plaintiff's counsel failed to meet their burden that they will adequately represent the class.

Plaintiff's counsel failed to conduct the necessary discovery to meet their burden at the class certification stage. They took zero depositions, and disclosed zero experts. They conducted very limited written discovery that didn't even figure out the primary issue in the case – who paid premiums in excess of the Alleged Cap. *Gaston v. Calhoun Cnty. Bd. of Ed.*, 88 F.R.D. 356, 358 (N.D. Miss. 1980) (relevant to the 23(a)(4) requirement is the fact that counsel has undertaken no discovery in this matter); *Quinonez v. Pharm. Specialties, Inc.*, 2017 WL 4769436, at *4 (C.D. Cal. Aug. 10, 2017) (failure to support the Motion with evidence to meet the requirements of Federal Rule of Civil Procedure 23 strongly shows counsel's inadequacy to litigate this complex action); *Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir. 1981) (failure to conduct adequate discovery in preparation for trial rendered representation inadequate). Plus, this Court has already noted counsel's failure to meet deadlines and show up for hearings. (Transcript of Status Hearing, June 3, 2025, attached as Ex. C). Although one of the proposed class counsel (Attorney Lawson) submitted an affidavit regarding his experience, the other proposed class counsel (Attorney Hemminger) submitted zero proof. In assessing whether the plaintiff will

vigorously prosecute a class action, courts consider the experience and resources of the lawyers for the class, as well as their record in the current case. 7A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1769.1, at 375; Moore's Federal Practice, § 23.25[5] [b] [i]-[iii], at 23–146–48; *see also Young v. Magnequench Int'l, Inc.,* 188 F.R.D. 504, 507 (S.D. Ind. 1999) (class counsel failed to satisfy Rule 23(a)(4) in part because she provided court no specifics regarding experience and resources).

### VI.    Plaintiff failed to meet his burden to satisfy the predominance requirement of 23(b)(3).

Plaintiff fails to satisfy the Rule 23(b)(3) predominance requirement. To assess predominance, the Court must consider both the underlying causes of action asserted by the plaintiff and any applicable defenses. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011); *Wal-Mart*, 564 U.S. at 367; *Asacol,* 907 F.3d at 53. Predominance tests whether a class action is efficient and fair:

> Inefficiency can be pictured as a line of thousands of class members waiting their turn to offer testimony and evidence on individual issues. Unfairness is equally well pictured as an attempt to eliminate inefficiency by presuming to do away with the rights a party would customarily have to raise plausible individual challenges on those issues.

*Asacol*, 907 F.3d at 51–52.

With respect to the affirmative claims of the class, as noted above in the discussion of R. 23(a)(2) commonality, Plaintiff's failure to identify a single element of his claims leaves both the Court and Heights unable to determine whether reliance—or other individualized issues—is an essential element, thereby precluding class certification. It is Plaintiff's burden to establish that his claims satisfy Rule 23. It is not the role of the Court or Southern to discern or define the elements of Plaintiff's KCPA and KRS 304.12-010 claims for him. *Speerly v. Gen. Motors, LLC,* 143 F.4th 306, 316 (6th Cir. 2025) (plaintiff must show that common questions "predominate"). "This is not

21

merely a pleading standard. The plaintiffs must affirmatively "prove" that the class meets the prerequisites for certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, (2011). And they must do so with "significant proof." *Id*. at 353." *Id.* Also, courts have found unjust enrichment claims are unsuitable for class treatment. *Russell v. Citigroup, Inc.* 2015 WL 9424144, *9 (E.D. Ky. Dec. 22, 2015) ("Because unjust enrichment claims often require numerous individualized inquiries, 'common questions will rarely, if ever, predominate an unjust enrichment claim.'" quoting *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256,1274 (11th Cir. 2009)).

With respect to defenses, the arbitration issue makes the case unmanageable. The plaintiff-specific issues of whether the putative class member signed a binding arbitration agreement and whether he or she opted out defeats predominance. To the extent there are differences in the language of the arbitration agreements during the Relevant Time Period, that will require individualized inquiry. *See Speerly v. General Motors*, 143 F. 4th 306, 335 (6th Cir. 2025) (*en banc* Sixth Circuit recognizing individual issues presented by arbitration issue and vacating class certification and remanding to determine "whether arbitration questions overwhelm common ones in this class.").

**VII.    Class adjudication is not superior, because individual adjudications are unavoidable.**

A class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Regarding the arbitration issue, Plaintiff "cannot demonstrate that allowing for such challenges in a manner that protects the defendant's rights will be manageable." *Asacol*, 907 F.3d at 55. Southern is entitled to, and intends to, move to compel arbitration for each putative class member subject to arbitration. That will result in unmanageable individual adjudications that a class action is designed to avoid.

**VIII.    Plaintiff has failed to prove the class is ascertainable.**

### A.  The court cannot determine who is in the class.

"Before a court may certify a class pursuant to Rule 23, the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 531, 537-38 (6th Cir. 2017) (citation and internal quotation omitted). Plaintiff cannot meet this burden for two reasons. First, Plaintiff has neither identified the putative class members who paid a premium exceeding the Alleged Cap nor has he offered a way to identify those individuals. Second, all or almost all of the putative class agreed to arbitration and agreed not to participate in a class action. (Ex. A at ¶¶ 7-8). Plaintiff has offered no evidence regarding the number of opt-outs. Based on the current record, this Court cannot determine if a particular individual is a member of the class. *Guzman v. Bridgepoint Educ., Inc.*, 305 F.R.D. 594, 612 (S.D. Cal. 2015) (finding that, based on the proposed class definition, Plaintiff failed to demonstrate an identifiable and ascertainable class in light of evidence suggesting that up to 96% of the proposed class may not even be eligible to participate in this class action).

### B.  The proposed class is an improper "fail safe" class.

The Sixth Circuit has held that the class description must be sufficiently definite such that "it is administratively feasible for the court to determine whether a particular individual is a member." *Cole v. City of Memphis*, 839 F.3d 530, 541 (6th Cir. 2016) (emphasis added). This is an issue of ascertainability, which is "an implied requirement that the putative class members can be readily identified based on the class definition." *Tarrify Props., LLC v. Cuyahoga Cnty.*, 37 F.4th 1101, 1106 (6th Cir. 2022). The class definition should avoid terms that depend on a merits adjudication. *Schilling v. Kenton Cnty., Ky.*, 2011 WL 293759, *6 (E.D. Ky. 2011).

23

Plaintiff's proposed class definitions all hinge on whether the premium "exceeds the <u>cap</u> set forth in KRS 304.19-080(3)(a)" (emphasis added).  This is a textbook example of a "fail safe" class, because the class is circularly defined by the merits of the Plaintiff's legal claims – whether there is a "cap" and, if so, the putative class member's premium exceeded it – and is therefore unascertainable before a finding of liability and completing a factfinding investigation into causation and damages. As Plaintiff is aware and as previously discussed, Southern contends the statutory cap does not apply because it was approved by the State of Kentucky to use various rate factors to increase their rates on single premium credit life insurance, based on various rate factors including terminal illness accelerated death benefits, dismemberment benefit, reduction of suicide exclusionary period, and advanced issue and terminal age. Therefore, on its face, the definition bases membership on whether an individual has a legally valid claim *i.e.,* that the cap existed and the premium paid exceeded it. Such a definition is deficient because once a putative class member meets the criteria for joining the class, he has likewise also already prevailed on his claim – thus, membership is also determinative of liability and damages.. A definition that suffers this flaw in defining class membership is "palpably unfair to the defendant, and is also unmanageable" for obvious reasons. *Schilling*, 2011 WL 293759 at *6.

The proposed class definition uses a description of individuals who would appear entitled to relief as of the conclusion of evidence and trial. This is improper because "either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 572 (E.D. Tenn. 2014), quoting *Randleman v. Fidelity Nat'l Title Ins. Co*., 646 F.3d 347, 352 (6th Cir.2011)

*Lindsay Transmission, LLC v. Off. Depot, Inc*., 2013 WL 275568 (E.D. Mo., 2013) involved the determination that a proposed class definition was an impermissible "fail-safe" class

24

in a consumer protection setting. The Lindsay plaintiff purportedly received three unsolicited advertisements by fax from the defendant. Thereafter, he filed a putative class action on behalf of himself and all similarly-situated individuals, relying on a prohibition against the use of any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine. Plaintiff sought to certify a class defined as "all persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant (3) with respect to whom Defendant cannot provide evidence of prior express permission or invitation for the sending of such faxes, (4) with whom Defendant does not have an established business relationship and (5) which did not display a proper opt out notice." Relying in part on Sixth Circuit law, the court concluded that "the proposed class includes only those persons to whom defendant sent faxes without prior consent and with whom defendant did not have an established business relationship." *Id* at *4. Therefore, the court held that the proposed class consisted "solely of persons who can establish that defendant violated the [applicable law]" and consequently, was a fail-safe class. *Id.*

Plaintiff's class definitions are plagued by the same shortcomings. Each definition assumes the seminal issues that (a) the cap applies and (b) the class member paid premiums that exceeded the alleged cap. Accordingly, plaintiff's motion should be denied as his proposed definition is a textbook fail-safe class.

## CONCLUSION

For these reasons, the Court should deny Plaintiff's Motion for Class Certification.

25

Respectfully submitted

*Attorneys for Defendant, Heights Finance Corp.*

By their attorneys,

*/s/ Daniel E. Linneman*
Jeffrey C. Mando, Esq. (#43548)
Daniel E. Linneman, Esq. (#91695)
ADAMS LAW, PLLC
40 West Pike Street
Covington, KY  41011
859.394.6200 | 859.392.7200 – Fax
jmando@adamsattorneys.com
dlinneman@adamstattorneys.com

Dated: October 8, 2025

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel E. Linneman, hereby certify that a true copy of the above document was served upon the below-listed attorney of record on October 8, 2025 via the Court's electronic filing system:

James H. Lawson, Esq.
Lawson at Law, PLLC
P.O. Box 1286
Shelbyville, KY 40066
james@lawsonatlaw.com

David W. Hemminger
 Hemminger Law Office, PSC
331 Townpark Cir., Ste 100-C
Louisville, KY 40243
hemmingerlawoffice@gmail.com


*/s/ Daniel E. Linneman*
Daniel E. Linneman